172867 Kathleen Fisk versus Bernard A. Hennig in Associates, please stand. Good morning. Would the lawyers who are going to argue the case please approach the bench and introduce yourself to the court. Philip Kiss on behalf of Kathleen Kiss. And Brian Kirsch, K-I-R-S-C-H, for defendant appellees. And do you want some time for rebuttal? Yes, sir. How much time? Just five minutes. Okay. All right, let's proceed. I think I'd like to give you a little bit of a background. Is the plaintiff your relative? The plaintiff is actually my ex-wife. You better win this one. We were married for five years, 30 years ago, so some distance. I'd like to give you a little bit of a timeline for the events that take place, only because the first thing that happened is important, and it seems to be conflated in the briefs. And that is that in 2008, Phyllis Schneider went to the defendants to have a living will done and to place a piece of property in the name of her cousin, Alan Bierman. And she did that. And the hunting firm prepared the living trust and also prepared a deed transferring the property to Alan Bierman. Approximately a year later, and I don't know exactly when that happened, because we haven't had access to those documents. But approximately a year later, she was living in a condominium next door to the plaintiff in this case, Kathy Kiss. And Kathy had been helping her. They had been living next door to each other for several years, and Kathy had been helping her. And she expressed to Kathy, you know, you've been doing so much for me. I would like to leave you all my property. And Kathy respectfully declined and said it's not necessary, but she insisted. And she said, I've got this law firm, my law firm, and no drafted documents. And so she went with Phyllis Schneider to the hunting law firm. And Phyllis Schneider specifically told the hunting law firm what she wanted. She wanted to have a will prepared, and she wanted her entire estate to go to Kathy Kiss, including the condominium that Kathy is next door to. That was drafted. It was executed. You know, we have read the briefs and read the record, and there are a number of legal contentions here you might want to get into. One of the questions I have is how come you never asked to file an amended complaint here? I didn't have an opportunity because I felt I didn't have an opportunity. And the reason is this, that Judge Shelley's ruling was that the case was dismissed with prejudice. And my understanding was that once it was dismissed with prejudice, I no longer had an opportunity to file an amended complaint. And that was the only ‑‑ and I might add that ‑‑ Well, how about on a motion afterwards to ask leave to file an amended complaint? Well, in the transcript that's attached in the brief, it seemed as though that was not a realistic opportunity. She was very clear, and I might add this was the second motion to dismiss. There was a first motion to dismiss, and in the first motion to dismiss, she allowed us discovery. And in fact, that discovery was actually sent out. Both the plaintiff and the defendant sent that discovery out. Before the time period for answering that discovery, defendants filed a motion to stay in the discovery, which was granted, and then they refiled, they filed another motion to dismiss, the other motion in this case. And that motion to dismiss was granted. And in reading the motion and in reading the transcript, I thought there was no ‑‑ it was done with prejudice, there was no opportunity for me to file an amended complaint. And also, I'm more interested in preserving our right to appeal, because I felt that under the circumstances, particularly the egregious circumstances, under which this motion was approved was troublesome. Let me ask you this. Did you ever file a motion to try to vacate the judge's order? No, I did not file a motion to vacate the judge's order. And part of the problem is this. One, the order was very clear. It didn't leave a lot of room for maybe there's some other avenue to be taken here, or typically a judge will say, file an amended complaint, I'll give you 28 days to file an amended complaint. This was cold. This was, this is over. And if you read, if you read the transcript, she's already made up her mind. She's heard no evidence. There's been nothing presented. The defendants haven't even filed an answer. We filed a verified complaint in a jury demand, and the judge comes back and says, you know, my only concern was that there was no actual injury or damages as far as the ownership of the condominium was concerned. So she's already made up her mind that there was no damages, and there was no issue with the ownership. Well, where are the damages? The damages are the sale of the condominium, which never occurred. There was a contract signed. The parties were ready to go forward, and they couldn't get title. And the reason they couldn't get title goes back to the 2008 living trust that was created. Where are the plaintiff's damages? The plaintiff's damages. What have they been deprived of? They do not have ownership of the condominium. The condominium is owned by Ellen Beerman, pursuant to a living trust that was created in 2008 that the Hennig firm created. Hennig had an obligation in 2009 when he created the will to notify Ms. Snyder that the property was already given to somebody else. Didn't do that. Misled the plaintiff, and not only misled the plaintiff, but then had the note to say, you know what? We need to probate this estate. Why did you subtract? We need more money from you. They knew because one of the things that is listed in the record that is somewhat completed is that there was a trust. The plaintiff didn't have ownership. Where is the damages? You haven't shown how there's any damages. Show me where the damage is. The damages are that Ms. Snyder promised this property to this plaintiff. Ms. Snyder went to her lawyer and said transfer the property. The lawyer said the property is transferred, even wrote letters to that effect, knowing, knowing that the property was never transferred or couldn't even be transferred because the property was owned by Ellen Beerman. In addition to that, the damages are the lawyers called to the plaintiff and said, we need money. We need money to probate this. And they already know probating isn't going to do anything. Is there any account here concerning the fact that there was no need to probate and that that was legal enough practice to probate? Is there something in here about that? There is in the complaint. Where? There's a sentence maybe somewhere. No, there's a paragraph stating that the property was owned by Ellen Beerman and that they prepared the documents transferring that property to Ellen Beerman. And then they misled throughout. They kept writing letters misleading the plaintiff saying, you know, we're probating the estate. And then finally at the end, they write her a letter and say, they don't say we transferred. The last letter that's listed in there is the estate is now closed. I mean, is there anything in your complaint that says that the lawyer deviated from the standard of care of lawyers in probating this matter? Is there any such statement anywhere in the complaint? I mean, that's what you need for a legal malpractice complaint, a violation of a standard of care. Is there anything in there at all about that? I believe there is. Possibly not as directly as you're stating it, but I believe there is. There are several things that I think you're wrong. But even assuming that it's not in there, that under a 615 or a 619, that, you know what, give them one opportunity, give them an opportunity to correct the complaint. Say, you know what, it's sufficient. It's sufficient for this. They don't even have to say the reason, but just we don't think the complaint is sufficient to amend the complaint. We weren't even given that. It was dismissed with prejudice. What should have happened is there should have been a proper 615 or 619 motion filed that the judge ruled on, but it wasn't. The judge ruled on a motion that was in and of itself defective, and it was defective both as a 615 and as a 619. And there was no, they were combined, which under 619.1 you can do, but it's very clear it has to be separated. The two monuments have to be separated. They have to be separately identified. And later in the transcript, the judge says, oh, this was a 619. But even if it was a 619, the motion itself that she ruled on required that the nine reasons under the 619 that you compiled needed to be articulated. They weren't. There was nothing in that motion that gave you any indication of what it was. And as a matter of fact, with respect to the 619, there should have been an affidavit. There should have been an affidavit supporting it. There was no affidavit. This case was dismissed on nothing more than their motion to dismiss, which was improper. There was never, they never answered the complaint. They never provided, they never admitted or denied a similar allegation in the complaint. And yet the judge dismisses the complaint with prejudice. How that is or how that in any way can be justice, I don't know. We're all aware that complaints should be literally construed. So if I don't use the exact words and say the standard of care in Illinois for an attorney preparing a will for the citizen to violate the standard of care, this doesn't necessarily make the complaint effective. Maybe it may not suit the judge, and the judge would give an opportunity to amend, but not to dismiss with prejudice. And in addition to that, there was no, if there was a problem, if anything that she had in her order was a problem, there should have been an evidentiary hearing, or at least an affidavit, something to say, you know, it's in her I transcript, so even if I believe the trust has created a cloud of a title, but she did it by transferring the title to herself in the trust. That document's not there. How does she know that? She's just pulling things out of the air and saying, well, it's true. If they would have attached a copy of the document, which they couldn't, because the document they're talking about is entirely separate. The document she's talking about is an entirely separate document. The document that the plaintiff needed was that the estate was closed and that some judge gave her a title to the property. Because Chicago Title said, guess what? Ellen Bierman owns this. And unless you show us a deed from Ellen Bierman relative to you, you know, you don't own it. So given all that, at the end, was there ever a request for leave to file a amended complaint? There was no specific request for leave to file an amended complaint. Well, let me ask you this. Was there ever a request for leave to file a motion to reconsider? There was. There was no motion to file. There was no motion filed for leave to reconsider. And part of the reason is that the appellate clock is ticking. Even if we had done that and a lot of litigants fall into the trap of, okay, well, fine, I've done this so I can wait. But guess what? You can't wait. Because you still have to file your notice of appeal on time. If you make a motion to amend or whatever, if that's ruled against, you may very well have lost your appeal right. Well, I think you're greatly mistaken about that because if you make a motion to reconsider, you know, you could always appeal the denial of that motion to reconsider and it considers the whole case. So your argument, you know, is not persuasive in that manner. Okay. I stand corrected then. Okay. Okay. I think you've run out of time. I'll give you some time for rebuttal. May it please the Court. Counsel. As plaintiff's briefs both referenced, this is a case that sounds in legal malpractice. That is the basic underlying allegation here. And what's interesting is not once in his briefs and not once today did plaintiff address the actual question, which was there was no actual damages proven or alleged in plaintiff's complaint. And the key document here, as the court record reflects, and the reason why Judge Shelley found that this motion should be dismissed with prejudice, is that because plaintiff, via her current counsel, executed a trustee's deed a month before Ms. Snyder passed away, giving Ms. Kiss ownership of this particular condominium. If she owns the condominium, there could be no damages for allegedly losing the rights to sell the condominium. What about this issue about they wanted to sell the property and there was a contract? His argument seems to be there's a cloud on the title from the living will giving it to Ms. Broom. And I understand that's his argument, but nowhere does it appear in the motion to dismiss that he's making that argument. It doesn't appear in his briefs. He says it today for the first time. And if you look at that particular contract that's included with the complaint, it's not signed by Ms. Kiss. It's not signed by anybody on her behalf. It is a blanket, blind contract, and the check that's provided for the equity or for the down payment, the earnest money, is signed by an entirely different person with a memo listing entirely different adverts. That was never listed in the trial court at all? No. Did you file this motion to dismiss? I did. Have you ever done that before? Yes. A hybrid motion like this? I have filed hybrid motions before, yes. Do you know that hybrid motions are inappropriate? They are 16.619.1 allows me to do so. I will acquiesce to the court that in hindsight, this probably should have just been a 619 motion. I'm not sure the 615 was necessary. But I think either way, you're looking at this from a de novo perspective in terms of a review, and I'm not sure it matters one way or the other. Okay. I talked about in my brief some procedural issues that were involved here, and I'm not going to rehash those because I think the court, as you indicated earlier, you've read the briefs, you've looked at the materials, and I don't need to rehash these. How about his argument that the matter should not have been probated? Again, it's an issue that he never raised in the lower court. It was never raised in his briefs. His argument here today that it should not have been probated is not part of his complaint. The reason why this matter went to probate, and I explained this to Judge Shelley, was that the plaintiff here was now a relative of Ms. Snyder. The defendants felt it was necessary to probate her estate because she essentially disinherited no relative. And that's why the matter went to probate was because of that particular circumstance. They felt it was necessary to protect Ms. Kiss's interest in doing so. Obviously, that's not included. There's been no depositions. There's nothing in the record other than my representation to Judge Shelley when that occurred. But that was the issue that she presented, and that was the argument or the issue I explained to her at the lower court level. I mean, if they spend money for probate and it shouldn't be probated, there would be damages on that issue, would it not? If that were indeed an allegation and a portion of the complaint, there would be. But then again, Ms. Kiss is a third-party beneficiary. She's not a direct client of the defendants here. She's certainly entitled to file a legal malpractice case under the law as a third-party beneficiary, but she has sent essentially the bill for services because Ms. Kiss was the only recipient under the will. She had all of the assets under the will. There was nobody else to pay other than what Ms. Kiss had received. So she has sent the bill because there's no one else to pay the bill besides her for those fees. I mean, you didn't obtain her consent to probate it, did you? My clients? Yes. They advised her that they were going to seek probate. Yes, there is correspondence in the file that says that. I don't know if she ever said specifically in response to that, yes, I cannot make that representation here today. I mean, she didn't authorize it, did she? Like I said, I don't know that answer to that question. I was not personally there for the conversations that would have occurred in 2013 or 2014. Would she have the ability to authorize that or decline that? Would she have that right as a third-party beneficiary and not a client? I think as a third-party beneficiary she can certainly suggest that or make a recommendation, but I don't know if she would have the right to decline that. If they believe they have an ethical duty to the estate to put the matter into probate, I think as lawyers they have that obligation to do so. Continuing further, Your Honors, this motion to dismiss was heard and argued before Judge Shelley. As the transcript notes, Mr. Kiss was not present at the hearing that day. He arrived late, and Judge Shelley ruled without his presence being made. You mentioned earlier about – I mean, is that appropriate for a judge to make a ruling like that when the lawyer is not there? I don't know if the word appropriate is the correct wording. The motion is set for a certain time. The hearing is set for a certain time. And I don't know how Judge Shelley can control Mr. Kiss being on time or late. Mr. Kiss certainly could have emailed me, could have called me, could have texted me. He could have called the clerk and said, I'm stuck in traffic or whatever may have been the train broke down. He didn't do any of those things? Not as far as I know. I mean, he never contacted me. There's never been an allegation or a statement that he contacted the court. But didn't the judge stop the proceedings for a while for you or whoever was present to try to reach counsel? I did. I tried to call Mr. Kiss's office. I got a voicemail. Mr. Kiss's office is in Gurnee. I quite honestly did not leave a message. Reaching an attorney in Gurnee, being in downtown, getting there in a matter of moments, is not going to realistically make a difference one way or the other. So, yeah, in hindsight, could I have left him a message? I could have, but Mr. Kiss did indeed appear probably 10 to 15 minutes after that phone call was made, so I know he must have been on his way. In looking at this matter, as we talked about, this was decided on motion to dismiss as a matter of prejudice because of this particular trustee's deed. Judge Shelley found that the deed controlled and that Ms. Kiss had ownership of the property. If she has ownership of the property, there can be no basis for the alleged damages that she lost the ability to sell that property because she owns it herself. This is not a situation where there is darkness or clouding of the title. The title itself was prepared and the deed itself was prepared by Mr. Kiss and Ms. Kiss herself. She had that information directly available to her. Judge Shelley's ruling was proper, it was appropriate, and it should be affirmed by this court. Thank you. Again, the deeds, these trustee's deeds are being complained. There are two separate trustee's deeds. One done back in 2008 that Chicago Title said, that's the operative deed, and that is the deed that transfers the property to Shelley Berman, who Chicago Title contends is the owner of the property. There's another trustee's deed that I prepared, and that deed was prepared just prior to Ms. Schneider's death, and it was based on the call of attorney that the Hennick firm prepared, giving Kathy Kiss the authority to prepare a deed and to transfer the property to whoever she wanted. She came to me first when that was at issue. She came to me and said, Billy Schneider is in hospital, they don't anticipate she's going to live much longer. Look at these documents, is there any way I can save money? So the only thing you could possibly do is deed the property to yourself, and you might be able to save probate. So I prepared a trustee's deed, which they keep saying transferred the property to her, and in fact it did. I transferred the property to her, it was properly recorded, and everything was set. The only problem was the owner of the property didn't sign the deed, because the owner of the property was Ellen Gehrman. It wasn't Billy Schneider, and it wasn't Kathy Kiss under the call of attorney. And so basically they did, we went back to them and said there's a problem, and they didn't even recognize the problem. They sent a letter saying, oh yeah, because there's other people, and other relatives, and it's one of the exhibits, there's other relatives, there's uncertainty as to the ownership. So the way we're going to take care of this is we'll probate the estate. And then they went ahead and they did it, except they never gave her a deed, they never transferred the property to her, because once they got into it. But you already told us that, this is rebuttal, so we don't have time to rehash that. What's important is they didn't even recognize it. They sent her a letter saying, you need to get away. But you're going into facts, not the legal arguments that we're concerned with here. The only other thing I would say is that Judge Sheldon, again, conflated those two arguments in her ruling, not arguments, the deeds, and basically said, well, she owns it. But there was never anything attached as an affidavit, or as an exhibit, to their motion to say that in fact Cathy Pierce owns it. So how Judge Sheldon came up with this is just conjecture. There was no answer to the complaint, nothing else on which she could have based her ruling. Okay. Thank you. Thank you very much. We'll take this case under advisement, very interesting case also. Thank you.